### Joe Carzine v. The State.

#### No. 6102. Decided February 16, 1921.

**1.—Adulterated Food—Police Power—Article 700, Penal Code.**

Article 700, Penal Code, reflects the legislative will to prohibit the sale for food of the flesh of an animal that has not been slaughtered but which died from some other cause, and is within the scope of the police power.

**2.—Same—Words and Phrases—Statutes Construed—Pure Food Law.**

We are not in accord with appellant's view that the term "diseased animal" and "animal that died otherwise than by slaughter" as used in the statute cannot be separated, and as we conceive the legislative intent, the flesh of a diseased animal is within the prohibited class, although such animal may have been slaughtered, and the sale for food of the flesh of an animal that died otherwise than by slaughter is also prohibited.

**3.—Same—Accomplice Testimony—Charge of Court—Corroboration.**

Where all the witnesses were accomplices to the transaction of the sale for food of the flesh of an animal that died otherwise than by slaughter, except one witness whose testimony only went to the corroboration that she bought a piece of the condemned meat, and to nothing which related to defendant's connection therewith, the conviction could not be sustained; although the court correctly instructed the jury as to the rule of accomplice testimony.

Appeal from the County Court of Fannin. Tried below before the Honorable A. P. Bolding.

Appeal from a conviction of selling meat for food of an animal that died otherwise than by slaughter; penalty, a fine of $25.

The opinion states the case.

*Cunningham, McHahon,* and *Lipscomb,* for appellant.

MORROW, Presiding Judge.—The former appeal is reported in 220 Southwestern Reporter, page 102. We adhere to the conclusions of law therein expressed.

Article 700 of the Penal Code reflects the legislative will to prohibit the sale for food of the flesh of an animal that has not been slaughtered

but which died from some other cause. This, in our judgment, is, within the scope of the police power, not unreasonable, but, on the contrary, a wholesome regulation in the interest of public health and in line with others upheld by the courts in the cases to which reference is made in the reported opinion.

We are not in accord with appellant's view that the term "diseased animal" and "animal that died otherwise than by slaughter" as used in the statute cannot be separated. As we conceive the legislative intent, the flesh of a diseased animal is within the prohibited class, although such animal may have been slaughtered. The sale for food of the flesh of an animal that died otherwise is prohibited. The prohibition is absolute and not dependent upon the decision by the jury that the flesh of such animal is not fit for food. The fitness of it is not open to inquiry, and the rejection of evidence tending to show that although the animal died and was not slaughtered, its flesh was wholesome, was proper.

The appellant did not testify in this case. All the evidence connecting him with the transaction comes from accomplice witnesses. The court instructed the jury that they were accomplishes. From their testimony it appears that the appellant, after the hog died, stuck it with a knife, caused it to be taken to the market and butchered, and agreed with one, W. A. Finley to sell it, and that Finley caused his son, Hemis Finley, to peddle the meat and sell it, the proceeds being divided between the appellant and W. A. Finley.

Hemis Finley testified that he sold a piece of the meat to Mrs. Anthony. Mrs. Anthony was the only witness cognizant of any of the facts who was not an accomplice. Her testimony corroborates that of Hemis Finley to the point that she bought a piece of hog meat from him and paid him for it. It goes no further, however. She knew and testified to nothing relating to appellant's connection with the meat she bought. To establish the connection reference must be made alone to the testimony of several accomplices. The statute, Article 801 of the Code of Criminal Procedure, imperatively requires, as a predicate for conviction upon accomplice testimony, that there be other evidence corroborating the accomplices and tending to connect the accused with the offense; and further declares the corroboration insufficient if it merely shows the commission of the offense. In the absence of corroboration the jury is not authorized to base its verdict upon accomplice testimony, notwithstanding they may believe it to be true. This is the policy of the State, made plain by the Legislature, and often declared by the courts. Lopez v. State, 34 Texas, 133; Wright v. State, 43 Texas, 170; and other cases listed in Vernon's Texas Crim. Statutes, Vol. 2, page 737, note 14. The use of the testimony of one accomplice to corroborate that of another does not satisfy the law. The corroboration must come otherwise than from the lips of the accomplice. Phillips v. State, 17 Texas Crim. App., 169; Sessions v. State, 37

Texas Crim. Rep., 62; and other cases in Vernon's Texas Crim. Statutes, Vol. 2, page 739, note 16.

The court properly instructed the jury in accord with the law but the record is bare of corroborative evidence, circumstancial or direct, essential to conviction.

A reversal of the judgment is ordered.

*Reversed and remanded.*